UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BEVERLY MURPHY, et al. )<br>      Plaintiffs, )<br>)<br>v. )<br>)<br>GENERAL ELECTRIC COMPANY, et al. )<br>      Defendants. )<br>) | 3:09-cv-00217 (WWE) |

## **MEMORANDUM OF DECISION ON MOTION TO REMAND**

This case arises out of plaintiffs'[1] allegations that exposure to asbestos from products manufactured by defendants Buffalo Pumps, Inc. ("BP") and General Electric Company ("GE"), during their employment at General Dynamics/Electric Boat Division, caused certain plaintiffs to contract asbestos-related diseases such as malignant mesothelioma. Mesothelioma is a fatal disease for which asbestos exposure is the only known cause. Two of the plaintiffs in this action are deceased.

## **BACKGROUND**

On January 20, 2009, plaintiffs filed an action for asbestos personal injury, wrongful death and loss of consortium in the Connecticut Superior Court, J.D. of

---

[1] Plaintiffs are Beverly Murphy as executrix for the estate of Paul Murphy and individually, Bertrand Gardiner, David Bridge as executor for the estate of Herbert Bridge, Betty Bridge, Ralph Hallquist, Richard Belanger, Pasquale Cantone, Carl Mitchell, Richard Archer, Michael W. Smith, Martin Altbergs, Joseph Riddick, Thomas Kohler, Alfred Demuth, Louis Cardillo, Frank Clay, Stephen Kokosky and Ronald Raymond (collectively "plaintiffs").

1

Fairfield at Bridgeport.  Among their various claims, plaintiffs complain that defendants failed to warn of the dangerous characteristics of asbestos and failed to provide knowledge regarding known safety precautions to avoid harmful exposure to asbestos.  Plaintiffs allege that such failures caused asbestos related diseases, such as mesothelioma, leading to pain, mental anguish, and premature death entitling them to damages.  No answer has yet been filed.

BP filed a Notice of Removal on February 4, 2009 pursuant to 28 U.S.C. § 1442.  One day later, GE joined in the removal petition. Both parties timely filed their notice of removal. Plaintiffs now move to remand this case to state court, arguing that this Court lacks subject matter jurisdiction.

## LEGAL STANDARD

A party may remove a case from state court to federal court only if the action is one over which the federal court has jurisdiction.  28 U.S.C. § 1441(a).  In order to demonstrate that removal is proper, the movant bears the burden of showing the existence of federal jurisdiction.  Actions brought against federal officers in state court may be removed if the defense depends on federal law.  Jefferson County v. Acker, 527 U.S. 423, 431 (1999).  Further, under 28 U.S.C. § 1442(a)(1), a person acting under the authority of an officer of the United States may remove a case filed in state court.  The right to removal is absolute for any act brought "under color" of the federal officer.  See Willingham v. Morgan, 395 U.S. 402, 406 (1969).

To remove on the basis of the federal officer defense, defendants must (1)

establish that they are "persons" under the law who acted under the authority of a federal officer; (2) show that they performed the actions for which they are being sued under color of federal office; and (3) raise a colorable federal defense.  Isaacson v. Dow Chem. Co., 517 F.3d 129, 134 (2d Cir. 2008); see also Jefferson County, 527 U.S. at 431.  The federal officer removal statute is construed broadly and "should not be frustrated by a narrow, grudging interpretation."  Arizona v. Manypenny, 451 U.S. 232, 242 (1981).  Defendants need not show that they will prevail in federal court but only that § 1442(a)(1) is applicable to the instant matter.  Willingham, 395 U.S. at 407.

## ANALYSIS

### 1.   *Persons under the law acting under authority of federal officer*

While it is undisputed that defendants are "persons" under the law, In re Methyl Tertiary Butyl Ether Prods. Liab. Litig., 488 F.3d 112, 124 (2d Cir. 2007), defendants must also show that they were acting under color of a federal officer.  An entity acts under a federal officer when it assists or helps carry out, the duties or tasks of the federal superior.  Watson v. Philip Morris Companies, Inc., 551 U.S. 142, 127 S. Ct. 2301, 2307 (2007).  In other words, there must exist a "special relationship" between the two, such as where a party contracts with the Government to "provide a product that the Government was using during war – a product that in the absence of Defendants, the Government would have had to produce itself."  Isaacson v. Dow Chemical Co., 517 F.3d 129, 137 (2d Cir. 2008).

That is exactly the situation at hand, as set forth in defendants' supporting

affidavits.[2]  Hobson avers that GE maintained and supplied turbines for United States ("U.S.") Navy ships "under contract between GE and the shipyards and/or United States of America, specifically the Navy Department."  (Hobson Aff., Doc. # 17-3, ¶ 6.)  Kraft attests that "Buffalo Pumps has for years made and supplied pumps for Navy ships under contracts between Buffalo Pumps and the shipyards and/or the United States of America, specifically the Navy Department."  (Kraft Aff., Doc. # 16-24, ¶ 3.)  Defendants, pursuant to Government contracts, manufactured and supplied  turbines and generators (GE) and pumps (BP), for use on Navy submarines and surface ships acting under the direction of the Navy and therefore under color of a federal officer.

### 2. *Causation Requirement*

The second prong of the Jefferson County standard is a causation requirement.  It requires that defendants demonstrate that the actions were performed because of Government requests.  See Isaacson, 517 F.3d at 137.  The evidence here is sufficient to establish for purposes of removal that defendants produced equipment based on naval guidelines and specifications.

Hobson,  former Manager of Navy Customer Service for GE's Navy and Small Steam Turbine Department, avers in the various supporting affidavits that "GE, during all aspects of its turbine work for U.S. Navy vessels, performed its work under the

---

[2]   In support of federal jurisdiction, GE relies on the affidavits of David Hobson ("Hobson"), retired Navy Admiral Ben J. Lehman ("Lehman") and retired Navy Captain and Medical Doctor Lawrence Stilwell Betts ("Betts") and BP relies on the affidavits of retired Rear Admirals Roger Horne, Jr. ("Horne") and David P. Sargent ("Sargent") and Martin Kraft ("Kraft").

immediate supervision of the Navy through the NAVSEA officer." (Hobson Aff., Doc. # 17-4, ¶ 8.)    For BP, Horne, Sargent and Kraft aver that pumps built for the Navy were manufactured according to detailed specifications provided by the Navy. (Horne Aff., Doc. # 16-3, ¶ 10; Sargent Aff., Doc. # 16-8, ¶ 30; Kraft Aff., Doc. # 16-24, ¶ 8.) Specifically, Horne attests that "any and all work performed on pumps built and supplied for these ships by vendors such as Buffalo Pumps was performed to requirements specified by the Navy..."  (Horne Aff., Doc. # 16-3, ¶ 5.)  Asbestos was a necessary component of the requested equipment and the evidence supports the conclusion that its inclusion was due to the Navy's demands. (Sargent Aff., Doc. # 16-8, ¶ 29; Hobson Aff., Doc. # 17-3, ¶ 9.)

With regard to applicable and necessary warnings for the equipment, Plaintiffs' argument –that the Navy's "Uniform Labeling Program for Hazardous Industrial Chemicals and Materials" did not govern the types of labels to be affixed by manufacturers– is unavailing.   As previously held, the Uniform Labeling Program "would not have applied to product manufacturers, such as Buffalo Pumps and GE, that contracted with the Navy because, by its terms, 'it governed the labeling of hazardous chemicals by Navy personnel, not outside product manufacturers.'" Contois v. Able Indus. Inc., 523 F. Supp. 2d 155, 162 (D. Conn. 2007) (citing Machnik v. Buffalo Pumps, Inc., 506 F. Supp. 2d 99, 104, n. 3 (D. Conn. 2007)).

Furthermore, defendants provide evidence that the Navy's detailed specifications did not permit manufacturers to add warning labels. (Horne Aff., Doc. # 16-3, ¶ 14.)   Simply, the Navy would not have permitted an individual supplier or manufacturer to substitute or add warnings that were not approved or requested by the

Navy. (Hobson Aff., Doc. # 17-4, ¶ 23.) Lehman, who worked in naval architecture and marine engineering since 1942 and worked at GE from 1946 to 1948, stated that military contractors were not permitted to deviate from the Navy's specifications for materials and equipment, including specifications regarding the use of warning labels. (Lehman Aff., Doc. # 17-10, ¶¶ 3, 7.)

Therefore, for purposes of this motion only, defendants have sufficiently established the causal nexus between their actions and plaintiffs' claims.

### 3. Colorable Federal Defense

Lastly, defendants must assert a colorable federal defense. Defendants assert the military contractor defense which, if established, presents a colorable federal defense in both design defect and failure to warn cases. Boyle v. United Techs., Corp., 487 U.S. 500, 512 (1988). "The military contractor's defense is premised on federal displacement of state law where state law significantly conflicts with the federal interest embodied in the federal government's sovereign immunity for discretionary functions." In re Brooklyn Navy Yard Asbestos Litig., 971 F.2d 831, 839 (2d Cir.1992). To show such a conflict, and hence to assert this federal defense, defendants must prove three elements: (1) the U.S. approved reasonably precise specifications for the military equipment supplied by the contractor; (2) the equipment conformed to those specifications; and (3) the military contractor warned the Government about the dangers in the use of the equipment that were known to the contractor but not to the Government. Boyle, 487 U.S. at 512. In a failure to warn case, defendant must establish the first prong of this test by showing that whatever warnings accompanied a

product resulted from a determination of a Government official, and thus that the Government itself "dictated" the content of the warnings meant to accompany the product.  In re Joint Eastern and Southern Dist. New York Asbestos Litig., 897 F.2d 626, 631 (2d Cir. 1990).  In accordance with the policy underlying the removal statute, the defendants need not fully prove its federal defense on the merits to justify removal.  Nesbiet v. General Electric Co., 399 F. Supp. 2d 205, 210-11 (S.D.N.Y. 2005) (citing Jefferson County, 527 U.S. at 431).

The Court finds that defendants have established a colorable military contractor defense. To prove the "reasonably precise specifications" requirement, defendants must show that the Government actively participated in creating the specifications for the products and warning labels supplied by defendants, and that the Government imposed these specifications on them. In re Agent Orange Product Liab. Litig., 304 F. Supp. 2d 404, 434 (E.D.N.Y. 2004).  At this preliminary stage, defendants' affidavits, as previously discussed, sufficiently establish that the U.S. Navy imposed "reasonably precise specifications" on GE and BP, both in the design of the equipment it supplied and in the content of the accompanying written materials, including warnings. See Nesbiet, 399 F. Supp. 2d at 207-09 (finding Lehman possessed sufficient personal knowledge of military contracts during 1940s to establish first prong of colorable federal contractor defense).

To prove the second prong of the military contractor defense, defendants must show that the products it supplied to the Navy conformed to the Navy's specifications. In re Agent Orange, 304 F. Supp. 2d at 434.  Essentially, defendants must demonstrate that the Navy "received exactly what it sought." Lewis v. Babcock Indus., Inc., 985 F.2d

83, 89 (2d Cir. 1993). Again, the defendants' affidavits satisfy this element.  The affidavits state that any materials supplied by a contractor that were not entirely consistent with the Navy's extensive specifications probably would have been rejected.

The third prong of the military contractor defense requires defendants to show that, at the time of plaintiffs' alleged exposure to asbestos, defendants did not fail to warn the Navy of any dangers associated with asbestos that were known to them but not to the Navy.  Boyle, 487 U.S. at 512.   Betts' affidavit provides a basis for concluding that the Navy, and not military contractors, was in the best position to know of the health hazards related to asbestos.  Betts avers that since the 1920s the Navy was aware of the potential health hazards of exposure to asbestos and that the "information possessed by the Navy, with respect to the specification and use of asbestos, and health hazards associated with its use aboard Navy vessels, far exceeded any information that possibly could have been provided by a turbine manufacturer."  (Betts Aff., Doc. # 17-8, ¶¶ 27-28.)  See Nesbiet, 399 F. Supp. 2d at 209, 212 (discussing Betts affidavit and finding it sufficient to establish third prong of colorable federal defense).  BP satisfies this element through the affidavit of Forman, a specialist in preventative and occupational medicine and industrial hygiene in the Navy.  Forman avers that the Navy has always taken responsibility for the health and safety of its personnel and was well educated in the uses and dangers of asbestos during the relevant time period.  (Forman Aff., Doc. # 16-18, ¶¶ 11, 13.)

In light of the above evidence, defendants have established a colorable federal defense.  Further, the evidence supports the view that the Navy was aware of the dangers of asbestos and that defendants did not have to warn the Navy of such

dangers.  Without addressing the merits of the defense, the Court finds that defendants can assert a colorable federal officer defense pursuant to 28 U.S.C. § 1442.  Federal jurisdiction over plaintiffs' claims is appropriate.

Accordingly, plaintiffs' attempts to disclaim federal jurisdiction must fail because federal officer jurisdiction is based on the defendants' defenses, not the plaintiffs' claims. Defendants are eligible, as a matter of law, to assert a federal officer defense that grants federal jurisdiction.

## CONCLUSION

For the reasons set forth above, plaintiffs' Motion for Remand (Doc. #14) is DENIED.

Dated at Bridgeport, Connecticut, this 15th day of July 2009.


_____/s/_____

WARREN W. EGINTON
SENIOR U.S. DISTRICT JUDGE